WARREN BROS. CO. v. CITY OF NEW YORK et al.

(Circuit Court of Appeals, Second Circuit. April 10, 1911.)

No. 223.

1. PATENTS (§ 327*)—SUITS FOR INFRINGEMENT—EFFECT OF PRIOR DECISIONS.
    Not only the doctrine of comity, but also the orderly administration of justice, requires that the Circuit Courts should adopt and follow the decisions of the Circuit Courts of Appeals of other circuits than their own respecting the validity and infringement of patents, rendered upon facts substantially identical.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 620-625; Dec. Dig. § 327.*]

2. PATENTS (§ 328*)—INFRINGEMENT—PRELIMINARY INJUNCTION—PAVEMENTS.
    An order granting a preliminary injunction to restrain threatened infringement of the Warren patent, No. 727,505, for an improvement in pavements, claims 5, 6, and 11, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Warren Bros. Company against the City of New York and the Uvalde Asphalt Paving Company. From an order granting a preliminary injunction, defendants appeal. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This cause comes here upon appeal from an order granting preliminary injunction against a threatened infringement of claims 5, 6, and 11 of letters patent No. 727,505, granted to Frederick J. Warren, May 5, 1903, for a new and useful improvement in pavements. A statement of the claims and a discussion of the issues will be found in Judge Coxe's opinion, delivered December 6, 1910, as follows:

This is a motion for a preliminary injunction restraining the threatened infringement of claims 5, 6 and 11 of letters patent No. 727,505, granted to Frederick J. Warren, May 5, 1903, for a new and useful improvement in pavements. The claims in controversy are as follows:

"5. In a street-pavement, a bituminous mineral structure, the mineral ingredients of which are mixed and of several grades, so graded as to give the structure an inherent stability.

"6. A bituminous street-pavement structure containing mixed mineral ingredients of such grades as to give the structure an inherent stability."

"11. A street-paving structure composed of a mixture of mineral or wearing ingredients, and a plastic binder, the space between the mineral ingredients being less than twenty-one per cent. of the whole, and the plastic binder occupying said space."

The Circuit Court of Appeals for the Sixth Circuit in a carefully considered opinion held that the patent was valid and that these claims were infringed. Warren v. City of Owosso, 166 Fed. 309, 92 C. C. A. 227. Thereafter a petition for a writ of certiorari was presented to the Supreme Court of the United States and denied May 24, 1909. The refusal to grant writs of certiorari in patent causes is so general that no important inference can be drawn therefrom. I think it may be said, however, that if the court had entertained the opinion that even a small proportion of the errors pointed out by the defendants existed, the writ would have been granted.

In Warren Bros. v. City of Montgomery (C. C.) 172 Fed. 414, the Circuit Court for the District of Alabama followed the Owosso decision and sustained the patent. Whatever view may be entertained as to the obligation of the Circuit Court of one circuit to follow the decisions of the Circuit Courts of other circuits, I think there can be no doubt that the doctrine of comity not only, but the orderly administration of justice, requires that the Circuit Courts should adopt and follow the decisions of the Circuit Courts of Appeals of other circuits than their own, rendered upon facts substantially identical. Any other rule would lead to confusion and injustice.

Of course in such circumstances the defendant in patent causes may introduce new evidence of anticipation and may show that the facts on which infringement is based are essentially different from those in the adjudicated case. Such proof must carry conviction with it. It should not avail the defendant if the court be clearly convinced that it is condemned by the reasoning of the decision of the appellate court and would not have changed the result had it been there presented. This court must, therefore, consider as established the following propositions, which were at issue in the Owosso Case:

First. The validity of the patent.

Second. That the patent is not invalid for double patenting.

Third. That the patent is not anticipated by any of the alleged prior uses proved in the Owosso Case.

In brief, every proposition decided by the Owosso Case, upon substantially similar facts, is stare decisis.

This leaves only to be considered the Washington, Chicago and Cincinnati prior uses and the question of infringement. It must be remembered, however, that in the Montgomery Case the alleged Washington anticipation was considered and held to be unavailable. It is proper to say, however, that the Washington evidence was also before the court in the Illinois case, where an injunction was refused, but as no opinion is reported, it is impossible to say what consideration was given to it by the court.

The record in the Owosso Case is very voluminous. The defendant was represented by counsel experienced in the law of patents. The Barber As-

phalt Paving Company, which laid the Owosso pavement and assumed the defense, was familiar with the art and amply able to produce any proof of anticipation existing in the United States. It would seem improbable that in such circumstances the pavements of Washington, which city was the first, or among the first, in this country, to adopt asphalt pavements should have been overlooked, if the present contention regarding them is true. The general character of those pavements must have been familiar, not only to the officers of the defendant company, but to the officials of the Patent Office as well, and it is surprising, if a complete anticipation were to be found in the principal streets of the nation's capital, that some one did not discover it before. I do not overlook the fact that one of the counsel who represented the defendant in the Owosso Case has presented an affidavit in which he states that it was the judgment of the defendants and their counsel that they should rest the defense solely upon the prior use at Long Island City. Nevertheless, there is a presumption that the testimony now adduced was not presented because the defendant believed that it related to an entirely different construction. Assuming all that is said in favor of the experimental sidewalk at Long Island City, it is hardly to be supposed that the defendant would have omitted to give the proof if the precise construction had been used in the streets of Washington for years prior to the patent. If the fact were so, it might easily have been ascertained. The failure to present the proof suggests the probability that, in the opinion of the Barber Company, the fact was not so.

I have examined the affidavits and the specimens taken by both sides from the Washington pavements and am confident that the testimony does not establish anticipation beyond a reasonable doubt. Some of the specimens produced by the defendants have a general resemblance to the patented composition. Others, taken by the complainant from the same locality, have no resemblance to the particular features upon which patentability rests. It would, in my judgment, be setting a dangerous precedent to overthrow a patent which has been sustained by a Circuit Court of Appeals upon an alleged prior use, supported only by the controverted statements of affidavits. The presumption is against the existence of such a prior use and it should be supported by clear and cogent testimony, which has stood the test of cross-examination. It cannot be accepted if contradicted by proof of equal weight. It is not necessary that the court should reject such proof altogether; it is enough that there is doubt about it. The fact that the samples furnished differ so materially in structure and appearance seems to indicate that the influence of heat and cold and the use of the streets for heavy traffic during long periods of time have worked changes in these pavements, so that their present structure is not what it was when originally laid. The pavement on Corcoran street, for instance, is shown to have been laid under the patent to Scharf, which provides for three distinct layers. It would not avail the defendants if they were able to show that in the process of time, these layers have in some places been broken up and something resembling the complainant's structure has thus been sporadically produced. This would not be a prior use, but a prior misuse.

The Cincinnati use is even more remote. The pavement there is laid in blocks and is not intended at all for vehicular traffic. The Chicago uses need not be discussed as they are no better references than those to which attention has been called. It is enough to say that in my judgment the proof does not establish the invalidity of the patent beyond a reasonable doubt.

Upon the question of infringement no especial equities exist in favor of the defendants. They both had full knowledge of the Warren patent. Indeed, a contract was made in July, 1910, with the Uvalde Company to lay a pavement in the borough of Richmond. Suit was commenced and a motion for a preliminary injunction was made, but before the motion was argued an agreement was made between the defendants, by which the contract was canceled. The suit was thereafter discontinued. The only inference which can be drawn from this action of the defendants is that they were convinced that the specifications of the first contract, if carried out, would result in an infringement of the Warren patent. Within a few weeks after the first suit was settled by the cancellation of the contract a new agreement, with

187 F.—53

specifications changed in certain respects, was entered into and this suit was commenced to restrain the defendants from proceeding under the new specifications. The complainant contends that the new contract is but a cunningly devised plan to avoid the patent; the defendants, on the contrary, assert that it was the result of a bona fide effort to settle the controversy by the adoption of a pavement which would not infringe.

The claims in issue are for a product, not a process. Of course the claims must be read in the light of the description, but it cannot be doubted that any one using the Warren pavement will infringe, no matter how the pavement is produced. For instance, the specification says, "It is desirable to have the mineral aggregate rich in particles of the size passing the 200, 100 and 80 mesh sieves," but if the mineral particles are of the indicated size, it is immaterial whether they have passed through a sieve or not. We are dealing with a pavement, not the method of producing it.

The specifications here in question provide that the trap rock used shall be very hard and "it shall be the run of the crusher, passing through a screen with a one-inch mesh; the sand shall be hard grained, clean and sharp and shall all pass through a ten (10) mesh screen." The principal question is whether stone thus treated will produce the Warren structure. Stated more definitely, the question is whether the patented pavement can be produced by the ordinary "crusher run." But for this limitation, the second specifications are substantially identical with the first, which were canceled. In the first the proportions were 8½ parts of stone, 3 of sand and one of cement; in the second they are 9 stone, 3 sand and one cement. In both the parts are to be mixed until they become "a uniform bituminous concrete." The product of the crusher varies according to the character of the stone, the adjustment of the crusher and whether it be a jaw or gyratory crusher. In the present instance, however, the particles of stone must pass through a screen "with a one-inch mesh" and consequently the largest pieces must be less than an inch and vary from the maximum down to the smallest pieces.

On the part of the defendants a large number of experts of high standing and ability state that the use of the stone as it comes from the crusher without screening, sifting or selecting, takes the proposed pavement out of the claims of the Warren patent. In their opinion it is "impossible" and "simply absurd" to suppose that a pavement laid under the present specifications will infringe the Warren claims. But this is all matter of opinion, where something more than opinion is required. The defendants should show the court the pavement which they propose to lay. It does not materially aid the investigation to show what they do not propose to lay. The complainant has produced exhibits in which the crusher run was used, which seem to conform to the structure of the patent. The defendant has produced no sample of its proposed pavement. The fact that this controversy relates to a threatened infringement and that we have little but the opinion of experts to inform us what kind of pavement the specifications will produce, has made this motion unusually perplexing.

The record could have been reduced to one-half its present size if a sample of the pavement had been produced in court. As it is said that thousands of yards have been laid in Washington and elsewhere under specifications substantially similar to those in the case at bar, it would seem that the production of such a sample would not have been difficult. Where demonstration is possible I dislike to decide so important a question as is here involved, upon the opinion of experts.

The product of the "crusher run" when combined as stated in the specifications can be proved, and this being so, the court should not act until an opportunity has been given to present that proof.

My conclusion is that the motion should be granted on a day to be named in the order, unless in the meantime the defendants produce a sample of the proposed pavement with proof briefly stating how it was constructed. The most satisfactory method of securing this proof would be to permit a small section of the Richmond pavement to be laid, with a representative of the complainant present at the time.

The details can be agreed upon on the settlement of the order.

C. K. Offield (Offield, Towle, Graves & Offield of counsel), for appellants.

Archibald R. Watson, Corp. Counsel, and Francis Martin, Asst. Corp. Counsel, for appellant City of New York.

Edward M. Grout and Paul Grout, for appellant Uvalde Asphalt Paving Co.

W. K. Richardson (J. M. Head and W. G. McKnight, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. [1] This patent was discussed by the Court of Appeals for the Sixth Circuit in a carefully considered opinion. The patent was held valid and the claims construed. Warren v. City of Owosso, 166 Fed. 309, 92 C. C. A. 227. Referring to this circumstance Judge Coxe states the principles which should control when application for a preliminary injunction is subsequently made and resisted on ex parte affidavits, as follows:

"There can be no doubt that the doctrine of comity not only, but the orderly administration of justice, requires that the Circuit Court should adopt and follow the decisions of the Circuit Courts of Appeals in other circuits than their own, rendered upon facts substantially identical. Any other rule would lead to confusion and injustice. Of course in such circumstances the defendant in patent causes may introduce new evidence of anticipation and may show that the facts on which infringement is based are essentially different from those in the adjudicated case. Such proof must carry conviction with it."

Appellant's brief bitterly attacks this statement, but we understand it to be an accurate presentation of the law and find nothing in Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 488, 20 Sup. Ct. 708, 44 L. Ed. 856, which calls for any different conclusion. In that case new evidence introduced in a later suit on the same patent did convince the Circuit Court of Appeals that the patent was invalid, and it quite properly decided in accordance with its convictions. The practice indicated by Judge Coxe has been uniformly followed in this circuit, since this court was established. Box Co. v. Paper Co., 51 Fed. 229, 5 C. C. A. 165; Doig v. Morgan Machine Co., 91 Fed. 1001, 33 C. C. A. 683; New York Filter Co. v. Niagara Falls Waterworks Co., 80 Fed. 924, 26 C. C. A. 252; Consolidated Rubber Tire Co. v. Diamond Rubber Co., 157 Fed. 677, 85 C. C. A. 349.

The record in the Owosso Case is filed as a physical exhibit, the defendant's record alone in that case consisting of over 1,800 printed pages. We fully concur with Judge Coxe's finding, upon an examination of that record, that the state of the art as disclosed by prior patents and publications in evidence there is substantially the same as that disclosed here. Practically the only new questions are as to the effect of three alleged prior uses not testified to in the Owosso Case and as to infringement.

This conclusion of the Circuit Court is also bitterly assailed, and we must confess that we find it difficult to understand some of the statements in appellant's brief. It is stated that in the Owosso suit "the only defense made to the patent was an assertion of its invalid-

ity by reason of a single instance of prior use in the shape of a sidewalk laid at Long Island City." Reference to Owosso record, however shows numerous prior patents and prior publications introduced and commented upon by expert witnesses, and page after page of discussion of the art generally and of the meaning of the specifications and claims of this and other patents taken out by Warren and by others. The most cursory examination shows that the 1,800 pages were not wholly devoted to the history and characteristics of the pavement at Long Island City; and the opinion of the Circuit Court of Appeals shows that prior patents were discussed and considered.

The appellant's brief also contains the statement: That counsel have high confidence that this court "will not even assume that the question of double patenting was considered by the court in the Owosso Case, or any attention paid thereto." This theory of "double patenting" is based on two earlier patents to Warren, Nos. 675,430 and 695,421. Both of these patents were in the Owosso record, and defendant's expert, referring to them, testified (at page 758) that:

"The admixture of mineral aggregate specified in patent 675,430 comes absolutely within, and is covered by, the terms of claims 5 and 6 of the patent in suit."

The briefs on the Owosso appeal are not before us, but they were before Judge Jones in Warren Bros. v. City of Montgomery, 172 Fed. 414, who says:

"I find, from examination of the defendant's briefs before the Circuit Court of Appeals in that case, that the defense of double patenting was brought to the attention of the court and relied on."

Under these circumstances the "assumption" which we are here asked to make is certainly remarkable. In Rosenstern v. U. S., 171 Fed. 71, 96 C. C. A. 175, we suggested that it would be charitable for counsel to assume that, in disposing of the appeals which come before this court, it is our practice to listen to the arguments and to read the briefs. Certainly it would be most uncharitable for this court to *assume* that some other federal court fails to read the briefs or to consider the arguments therein advanced. All that we are here disposed to assume is that the suggestion in the brief was an inadvertence.

[2] As to the three new alleged prior uses and the question of infringement, we are in entire accord with Judge Coxe's reasoning and conclusions. The order is affirmed.