## WARREN BROS. CO. v. EVANS.

### (District Court, E. D. Pennsylvania. June 17, 1916.)

1. COURTS ⟨⟩96(1)—PRECEDENTS—FEDERAL COURTS.

A District Court will follow decisions of the Circuit Court of Appeals sitting for other districts, where the Circuit Court of Appeals for its own district has not decided the matter; such decisions, while not res adjudicata, constituting prior precedents.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325, 327, 334; Dec. Dig. ⟨⟩96(1).]

2. PATENTS ⟨⟩58—PRESUMPTION—INVENTION.

In considering the defense of anticipation, it is presumed that the patentee was the first inventor, and defendant, asserting anticipation, has the burden of proof.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 75; Dec. Dig. ⟨⟩58.]

3. PATENTS ⟨⟩58—ANTICIPATION—PRIOR ART AND PATENTS.

A subsequent producer of an article already produced is presumed to have knowledge of the state of the prior art, as well as publications and prior patents.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 75; Dec. Dig. ⟨⟩58.]

4. PATENTS ⟨⟩328—ANTICIPATION—WHAT CONSTITUTES.

The Warren patent, No. 727,505, for bitulithic pavement, consisting of stone of varying sizes, thus filling all of the interstices, and the whole being held together by some binder as pitch, was not anticipated because a portion of an asphalt pavement in front of the property of an owner, who objected to asphalt and demanded stone, resembled it, the stone in varying sizes having been dumped at that portion without any design or purpose, and the asphalt forming a binder.

In Equity. Suit by the Warren Bros. Company against W. C. Evans. Sur final hearing on filing hearing on bill, answer, and proofs. Decree for complainant.

Edward G. McCollin, of Philadelphia, Pa., and James M. Head and W. K. Richardson, both of Boston, Mass., for plaintiff.

Walter Biddle Saul and Cornelius D. Ehret, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. Due to the interesting subject-matter of this controversy, or to its admirable presentation by counsel, or doubtless to both, it is with a feeling almost of regret that we accept the compulsion to take the excluding view of it which we have taken. The case in its formal features is the ordinary one of the claim of a proprietary right in a product based upon the issue of letters patent and a denial of their validity. The patent bears the number 727,505, was issued for the claimed invention of Frederick John Warren, and now belongs to the plaintiff by assignment. The invention is based upon the discovery or recognition of a fact which, however familiar it may be to the initiated, seems so startling to the uninformed mind that there is a hesitation in its statement for fear of misconception. The fact, however, as we understand it, is this: If a delimited space be occupied, as nearly as may be, by broken material of a uniform unit

size of the parts of which it is made up, the proportion of the total volume of the space which will be void or unoccupied by the material will be about the same, no matter what the size of the unit parts. If it is desired to relatively reduce the voids, this result is accomplished, not by reducing the size of the unit parts (still retaining their uniformity), but by varying the sizes of the parts. The desired condition of a road when perfected is that the material of which it is composed should present the feature of a solid mass, in that the whole road space should be free from voids. Time and use direct their efforts toward bringing this about, and would eventually accomplish this result were it not for the faster working disrupting influences of water, frost, and the displacing pressure of heavy travel. This solidity must, in consequence, be produced before the road is used. The ideal construction is then the mosaic. The large voids between the large units to be filled as nearly as may be with units as large as the space will accommodate and to repeat this down to the smallest units, and then to cement the whole by a binder, so that you have a road unit made up of solid material. The vital elements of the defense presented require the claims of the patent to be so interpreted that the defendant's pavement can be held to not infringe or to compel an interpretation so broad as to open them to the successful assertion of anticipation.

[1] The real, at least in the sense of the first, question involved is whether there is now any question which is an open one, always excepting, of course, the question of infringement. There is a substantial (although not a formal) concession that the present case is to be so determined. Independently of the merits of the question of the validity of a patent, there must come a time when that question must be deemed to have been settled, whether rightly or wrongly; nevertheless, settled. If this be not so, rights evidenced by letters patents are no rights at all. All which can profitably be said upon the subject of the validity of this patent (except upon subsequently discovered evidence of anticipation) is embraced in the opinion accompanying rulings already made. That of Judge Lurton and the comments of Judge Anderson afford a sufficient reference. This patent was issued May 5, 1903. Time will therefore soon heal any hurt which the upholding of its validity may have done to the rights of others. Such validity is supported by the prima facie findings of the Patent Office. It has confirmation in a juridical experience so extensive that a mere list of the cases in which it has been litigated would unduly lengthen this opinion. This experience has embraced adjudications, not only in a number of the District Courts but in the Circuit Courts of Appeals in two different circuits and recognition in three other circuits supplemented by consideration in almost, if not quite, a round dozen of applications for preliminary injunctions. Out of all of this judicial consideration something in the nature of the establishment or denial of some definite rights must have resulted. What we find has resulted is the establishment of the validity of claims 5, 6, 9, and 11 of this patent beyond the reach of successful attack upon any grounds then litigated. Warren v. Owosso, 166 Fed. 309, 92 C. C. A. 227; Warren v. New York, 187 Fed. 831, 109 C. C. A. 591.

However free courts of different territorial jurisdictions, having equal powers and of like authority (such as the appellate courts of the several states and Circuit Courts of Appeal), may be to accept or refuse guidance from each other, trial courts ordinarily do not enjoy and cannot, without just criticism, assert a like freedom. We deem ourselves controlled by the rulings of Circuit Courts of Appeal of other circuits until the court of our own circuit has passed upon the same question. This, of course, is not because of the res adjudicata principle, but of comity and the acceptance of decided cases as a statement of what the law is. Because of these rulings there remains in this case only the question of infringement and the consideration of any evidence of anticipation not before considered. This view places the burden of the argument, after prima facie evidence of infringement, upon the defendant.

[2-4] The defense of anticipation may first be considered. The only new feature in this is the so-called McGovern, or more properly, Blake, pavement, or part of a pavement which has been found in an alley at the rear of No. 1442 Arapahoe street, in the city of Denver. The genesis of this pavement is worth tracing. It antedates the Warren patent. Parts of it bear a strong likeness, if not similitude, to the bitulithic pavement. In point of fact it would seem that parts of it could be found which would resemble almost anything. This is because of its origin. It cannot be said to have been made by McGovern, who had nothing to do with its actual construction, nor by Blake, who did have something to do with it. It would be more correct to say that it made itself. It came into existence after this fashion: A pavement there could be laid only at the instance of abutting property owners. McGovern was one of them. All the others wanted, or were at least persuaded to accept, an asphalt pavement. McGovern insisted upon having stone. Doubtless what he had in mind was a cobble stone or Belgian block pavement. The result of his attitude was that an asphalt pavement was laid, except opposite his property. To meet his views, or appease his opposition, Blake, who was city contractor had stone dumped there. The broken stone was of all sizes. The material used in the paved part of the street supplied the necessary binder. It is now found that in places the mixture was such as to show a very fair counterpart of the Warren pavement. In other places the accidental mixture was different. Can this be said to be such an anticipating as to defeat the patent? Something of the same question arose in the former cases with respect to other pavements. It was met with the observation that if "somebody had in fact made the (Warren) composition before he did, this does not necessarily defeat his patent."

In considering anticipation defenses (prior use or prior invention) we start with the presumption that the patentee is the first inventor. This must be overcome, and by that measure of proof which the law requires. The effect given to prior use, prior invention, prior publication, prior patents, is based upon essentially the same thought—the denial of the claimed invention. There are two thoughts in the statutory meaning of invention. One is the idea of originality, either of discovery or of creation; the other, the idea of priority or of novelty.

Each of two or more persons may independently discover or invent something. Each is an inventor. One, however, was prior in time. The accomplishment of the second man lacks novelty. The policy behind the patent laws is applied in view also of two things: One is to encourage invention and stimulate effort by recognizing and rewarding merit; the other is to be just to the other inventors and to the public. Neither the first inventor nor the public will have taken from them what is already theirs for the benefit of one who, however deserving as an inventor, has added nothing to the public possessions. There is also a secondary policy operating as a rule of evidence. It is pursuing a sound and indeed a necessary policy to assume the second producer knew of and had the aid of such knowledge of prior use, prior disclosures in publications, and prior patents; in other words, he is held to a knowledge of the prior art. The principle is clear enough, but when it comes to be applied in instances of prior use, or prior invention, common knowledge of human nature, or a very limited experience, will convince us of the necessity for extreme care in its application. Hence the rule requiring a high standard of proof to overcome the prima facie rights of a patentee. There is no suggestion of actual purloinment of ideas. There is no conflicting claim of another inventor. The real question here is whether the claimed discovery of Warren was already part of the public possessions. A very practical touchstone may be supplied in this test. A useful road can be made according to the Warren formulæ. It is the product, however, to which he makes claim and not the process. If, therefor, some one had previously produced the product, it had thereby become a public possession and it will not be taken from the public to be given to Warren. The quality of stability is one of the things which gives value to a road. The previously produced road (in common with the Warren road) possesses this quality. It is of no importance whether the maker of the road understood or could give a statement of the "why" of this result, or had an appreciation of the principles of its construction. Road making is an art as well as a science. If McGovern or Blake had produced the Warren pavement before Warren did, there was no novelty in the Warren product. This point of the argument for defendant is clearly presented and driven home. Let us go to the extreme verge on the other side.

The practice of the art of road making was limited to a mixture of pitch and sand or fine stone, the small units of which were of a uniform size. Without thought or intention on the part of any one, stone material of varying sizes had been dumped in some place, together with some pitch. The mixture happened to be in such proportions of stone of different sizes and of pitch as that the result was the same as the material of the present bitulithic road. Subsequently some one discovered the present method of producing this material, and was awarded a patent on his product. If the first dump heap was found, would its existence defeat the patent as an anticipation? Would it make any difference if the dump heap further happened to be within the limits of a road? Between these two extremes is to be found the line which separates what is from what is not an anticipation. An-

ticipation is essentially a fact to be found. We do not think the existence of an isolated product, blindly produced, and unrecognized for what it really was, never reproduced, and in that sense abandoned to oblivion, is sufficient, merely because of its resurrection, to defeat, a patent. It would be inaccurate to call it "an abandoned experiment," because that would give it a merit which could not be claimed for it. It is found not to be an anticipation because there is, in such an instance of production and use, no prior use of this product.

If the plaintiff was relying upon a process and not a product claim, the defense of noninfringement would be hard to meet. As against a product claim the defense is as hard to allow without a denial of all right in the plaintiff. The differentiation which the state highway officials make is impressive at first blush, but, to use a colloquial expression, "gets us nowhere," because its statement of the different modes of road construction is no denial of the further statement that the product of the third may be an infringement of a product patent owned by the users of the first.

If it were not for the adjudications referred to, we might readily yield to the persuasiveness of the very able counsel for defendant, and be convinced by the forceful argument addressed to us, but we have not been able to see how we can follow him without refusing to follow the courts by which this patent has been held valid. For this reason the bill of the plaintiff is sustained, and the usual form of decree in favor of the plaintiff, with costs, may be submitted.