## COOKINGHAM v. WARREN BROS. CO.

(Circuit Court of Appeals. Ninth Circuit.
February 2, 1925.)

### No. 4171.

**1. Patents ⬥328—Warren, 727,505, for street pavement, held valid and infringed.**

The Warren patent, No. 727,505, for a street pavement mixture, *held* not anticipated and valid as against the claim of double patenting. Claims 3, 5, 6, and 11 also *held* infringed.

**2. Patents ⬥120—Patent issued after application filed for second patent is not in the prior art.**

A patent issued after application filed for a second patent is not to be regarded as a part of the prior art, as against the second patent, unless it is clear that they cover the same invention.

**3. Patents ⬥121—Inventor may obtain separate patents, although standing in relation by way of genus and species.**

That inventions stand in the relation of genus and species does not prevent the inventor from obtaining patent for each, and, when the inventions are different, it is immaterial that one was issued before the other.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by the Warren Bros. Company against Holt W. Cookingham, administrator of the estate of Oskar Huber, deceased. Decree for complainant, and defendant appeals. Affirmed.

This is an appeal from a decree in favor of Warren Bros. Company, plaintiff below, holding valid and infringed claims 3, 5, 6, and 11 of letters patent No. 727,505, issued May 5, 1903, for a pavement, and awarding damages for infringement. Huber, original defendant, pleaded that Warren was not the original inventor and set up anticipation and invalidity, and that Warren's patent is a double one of United States No. 675,430, issued June 4, 1901. Inasmuch as the patent expired on May 5, 1920, during the pendency of the suit, injunction was not granted. By reason of Huber's death his administrator has been substituted.

[1] The patent relates to an improvement in the class of pavements which comprise a base of mineral matter and a plastic uniting medium consisting of a natural or artificial asphalt or cold tar composition, which are intimately associated together and used as the main or top surfacing of a roadbed. In his specifications, Warren sets forth that the invention is based upon his discovery that to insure the best conditions of construction, wear, and life in such pavements the portion of the pavement to which the invention relates must be made as dense and as free from voids as possible, and also stable and nonliable to displacement. He refers to the commonly accepted view that the best method is that in which the mineral matter used as a basis of the pavement and united by the plastic asphalt vehicle shall be in the shape of sand or fine gravel. This, he specifies, is erroneous, in that he has discovered that there is a smaller percentage of voids in a pavement which contains mineral components which are of relatively large size; that by the use of the larger sized grains or pieces—say, up to those which will pass through a two-inch ring—and employing with these larger grains proper quantities of the smaller sizes down to an impalpable powder, it is possible to reduce the voids of the mineral base below 10 per cent. of its bulk, and such a mixture when assembled and compacted will form a dense, solid, homogeneous, compact body with the smallest percentage of voids and possessing the highest degree of stability, one in which the largest and smallest pieces are associated with each other indiscriminately throughout the structure, and one which, because of the sizes of the pieces and their arrangement with respect to each other, offers the smallest areas of surfaces for the attachment of the plastic composition to them, so that not only is a superior binding effect or union obtained by the plastic composition, but a smaller quantity of it is necessary for the purpose of obtaining the best result. The main top surfacing may be covered, if desired, with a relatively thin surface of clear asphalt cement, or an asphalt or bituminous composition of any desired nature. The specified advantages of such a pavement are that the percentage of mineral employed is increased and the percentage of plastic uniting medium decreased, as compared with analogous pavements. Improved wearing properties are specified, due to the employment of a larger proportion of mineral to the proportion of the uniting medium and also to the fact that the mineral base is of such a structure, owing to the employment of a considerable percentage of relatively larger pieces, larger than are usually used, so that a very rigid and stable effect is obtained, and the voids formed by the mineral components are larger and fewer and the bituminous uniting medium contained in them forms a cellular structure which is stronger and adheres better to the

surfaces of the mineral components than where the voids are more numerous and smaller in size.

Of 13 claims made, we quote 3, 5,. 6, and 11, which are in issue:

(3) "A street pavement mixture composed of mineral or wearing ingredients, of which approximately 50 to 80 per cent. are between one-fourth inch to three inches in diameter, approximately 10 to 49 per cent. between an impalpable powder and one-fourth inch in diameter, and approximately 1 to 3 per cent. of an impalpable powder in combination with a binder."

(5) "In a street pavement a bituminous mineral structure, the mineral ingredients of which are mixed and of several grades, so graded as to give the structure inherent stability."

(6) "A bituminous street pavement structure containing mixed mineral ingredients of such grades as to give the structure an inherent stability."

(11) "A street paving structure composed of a mixture of mineral or wearing ingredients and a plastic binder, the space between the mineral ingredients being less than twenty-one per cent. of the whole, and the plastic binder occupying said space."

I. H. Van Winkle and J. M. Devers, both of Salem, Or., and L. A. Liljeqvist, of Portland, Or., for appellant.

J. M. Head and H. F. Lyman, both of Boston, Mass., and Richard Montague, of Portland, Or., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). Our understanding of Warren's invention is that the mineral aggregate detailed by him of itself resists displacement by traffic. Stability is obtained by following his idea, and is due to the arrangement of the mineral · structure which enables the use of a softer asphalt than would be otherwise practical, and· this is so by reason of the fact that a greater proportion of the wear and strain is carried by the mineral elements than by the binding constituent.

An unusually long history of litigation surrounds the Warren patent. In Warren Bros. Co. v. Owosso (1909) 166 F. 309, 92 C. C. A. 227, the Court of Appeals for the Sixth Circuit construed the Warren patent, and through Judge Lurton said: "Warren's invention, shortly stated, consists in the discovery that an aggregate of large and small pieces of stone, together with a certain proportion of stone dust, all mixed together and thoroughly permeated with bitumen or asphalt, results, when set, in a compact, stable structure, and is less liable to disintegrate from traffic or weather than any other method of grading or arranging the mineral constituents. Under the evidence, the particles are more compact in their relation to each other, and there is a minimum of friction in their interaction. The larger pieces of stone withstand the tendency of the small grains or dust to slip by each other and change the form of the pavement by disintegration and lumpy spots. * * * The fundamental idea of Warren is not that the 'density' of his composition gives the stability which he claims, but that the mineral aggregate should of itself resist displacement by traffic."

A similar understanding of the achievement of Warren was expressed by Judge Jones in the Circuit Court of Alabama (Warren Bros. Co. v. City of Montgomery, 172 F. 414), and by Judge Sessions in the District Court of Michigan (Warren Bros. Co. v. City of Grand Rapids, 216 F. 364), and by Judge Dickinson in the Eastern District of Pennsylvania (Warren Bros. Co. v. Evans, 234 F. 657). Judge Dickinson there referred to the contribution of Warren as the recognition of a fact that, "If a delimited space be occupied, as nearly as may be, by broken material of a uniform unit size of the parts of which it is made up, the proportion of the total volume of the space which will be void or unoccupied by the material will be about the same, no matter what the size of the unit parts. If it is desired to relatively reduce the voids, this result is accomplished, not by reducing the size of the unit parts (still retaining their uniformity), but by varying the sizes of the parts. The desired condition of a road when perfected is that the material of which it is composed should present the feature of a solid mass, in that the whole road space should be free from voids. Time and use direct their efforts toward bringing this about, and would eventually accomplish this result were it not for the faster working disrupting influences of water, frost, and the displacing pressure of heavy travel. This solidity must, in consequence, be produced before the road is used. The ideal construction is then the mosaic. The large voids between the large units to be filled as nearly as may be with units as large as the space will accommodate and to repeat this

down to the smallest units, and then to cement the whole by a binder, so that you have a road unit made up of solid material."

In the District Court of New York (Warren Bros. Co. v. New York, 187 F. 831, 109 C. C. A. 591), Judge Coxe discussed the patent and agreed with the decision in the Owosso Case. The Court of Appeals affirmed his opinion. Recurring to the decision of Judge Dickinson in Evans v. Warren Bros. Co. (D. C.) 234 F. 657, we find it was reversed (240 F. 696, 153 C. C. A. 494); but the ground of reversal was that there was no infringement by Evans, who used a composition with but a single grade of stone, namely, that which passed through a three-quarter inch mesh and that which was caught on a half inch mesh. The court said that all the grades from a half inch down to sand were excluded, and that there was a "jump" as distinguished from intermediate serial grading, directly down to a fine void-filling material, whose coarsest component is sand. The differentiation so pointed out emphasizes the view that the Warren patent contemplates a gradation of successive sizes of stone to the end that there may be obtained that interlocking effect which gives the stability to the invention. In the later case of Warren Bros. Co. v. Pace (D. C.) 247 F. 117, Judge Clarke with apparent doubt of its validity, upheld the patent, but ruled that there was no infringement by the use of the mixture employed by Pace. It is to be noted, however, that Judge Clarke rested his doubt of the accuracy of the Owosso decision chiefly upon an affidavit of one Page contained in the record then before him.

We have referred to the prior adjudications, not that they are obligatory upon us, but because they are the carefully considered opinions and decisions of learned courts upon the main question involved in the instant case. They demonstrate that the question of the validity of the Warren patent has been severely and extensively litigated, and that after critical examinations the invention has been sustained. We should therefore look upon the decisions with a deference suggestive of the importance of uniformity of ruling. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856. It is proper to say at this point that the pavement laid by defendant in all essential particulars is in accord with the formula of Warren, the mineral aggregate in the Huber pavement containing a continuing succession of graded sizes, starting with 1½-inch or 1¼-inch material, down to

the 200-mesh material, called dust or powder. It is clear that the voids are less than 21 per cent.; and that the percentages of stone greater than 1¼-inch and material between 1¼-inch and dust or impalpable powder, are such as clearly to establish infringement.

Counsel for defendant elaborate their defense of prior use by testimony with respect to pieces of pavement laid by Blake in Denver about 1892. There was testimony addressed to the precise material Blake used, and what type of base he used, and to the effect that his method and material were such as are covered by claims 5, 6, and 11 of the Warren patent. On the other hand, plaintiff's testimony with equal force tended to show that in two pieces laid by Blake what he did was largely experimental and was abandoned. With respect to another piece—the McGovern alley pavement in Denver—Blake seems to have used a graded mineral aggregate which embodied the idea of Warren's patent. But such use was not the result of adopting a formula in an effort to obtain a graded mixture of determined proportions of different materials; it was rather an unappreciated and accidental production which was neither repeated nor regarded as successful in teaching anything of value to the paving art. The Owosso Case, supra. Moreover, there is evidence tending to prove that Blake's gravel mixture used in two of his Denver pieces was used only as a base, having wearing surfaces of sheet asphalt. This is important, for Warren deals only with the wearing surface, an improvement in the main upper surface. His problem is readily distinguishable from that of constructing a base the function of which is to give a good foundation and support for the upper or wearing surface. And the Denver pavements should be judged by what they were as originally laid. The verity of the testimony giving the analyses made upon the assumption that, as originally laid, the Denver pavement had the coarse aggregate as a wearing surface without a sheet asphalt wearing surface on top, need not be questioned; but the assumption being erroneous, the results lose their value. Of course, after these many years it cannot be said with entire satisfaction what was the original construction of the Denver pavements. Recollections of 30 years back are to be very carefully weighed when relied upon to overthrow the legal presumption of the validity of a patent. There are some exhibits which tend to sustain the plaintiff's testimony. Finally, upon the history of the

Denver pieces defendant can reach no more advantageous position than to impel the conclusion that his evidence fails to carry that satisfying conviction that the law requires. The Washington pavements do not sustain the plea of anticipation. Some were evidently of a structure without a grading even approximating the Warren method; others appear to have been layer pavements, broken stone first, then finely broken stone or gravel with cement, then a top course of dust or carbonate. The Pittsburgh pavements were laid under specifications which call for a pavement quite similar to sheet asphalt, except that the wearing surface was to have no particles greater than a quarter inch. The Evans Case, supra; Barbed Wire Patent Case, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; The Owosso Case, supra; San Francisco Cornice Co. v. Beyrle, 195 F. 516, 115 C. C. A. 426; Diamond Patent Co. v. Carr, 217 F. 400, 133 C. C. A. 310; Consolidated Contract Co. v. Hassam Paving Co., 227 F. 436, 142 C. C. A. 132.

The state of the art is relied upon by defendant, who has introduced a number of patents disclosing mixtures of asphalt or bitumen into which gravel or crushed stone enter. But no one involves Warren's idea of the use of a succession of grades of stone, beginning with relatively large pieces and running down to the finest sand so graded that the aggregate will have inherent stability and will relieve the strain upon the bituminous binder. In the Ward (British) patent, No. 13,168 (1900), there appears the purpose to fill the interstices by using stone of different sizes, but Ward did not give any idea of the proportion of the ingredients necessary to be used, and his method is not to use a continuing series of graded sizes, but only two different sizes, a larger stone of 2½ inches and a smaller one of about ⅜ of an inch, without adding sand or dust. Experts say that by following Ward's directions it is impossible to obtain any such dense mixture as Warren's patent gives by his series of graded sizes. In the Owosso Case, Judge Lurton criticized Ward's patent as "lamentably lacking in instruction as to the proportions of mineral ingredients of the different grades."

The Averell patent, No. 293,214 (1884), was for an asphalt concrete conduit, the purpose of the invention being to provide a system of conduits or pipes for an underground electric system. It has little or no relation to the paving art. What might do for a conduit might never do for pavement.

Some publications are also relied upon by defendant. For instance, extracts from the records of the Commissioner of the District of Columbia, which suggest that in the binder course of the sheet asphalt pavement some sand can be used together with stone, to aid in the cementing of the stone together. References which pertain only to the binder course of the sheet asphalt pavement, and not to the wearing surface, can have slight weight.

[2] Another defense urged is double patenting, in that patent 727,505 here involved, application for which was filed May 16, 1901, and patent for which was issued May 5, 1903, was anticipated by another patent, No. 675,430, for a new improvement in pavement application for which was dated January 9, 1901, and patent for which issued June 4, 1901. Those dates show that the application for the patent in suit was filed some days before patent 675,430 was issued. The Patent Office under date of February 25, 1902, rejected the claims of the patent here involved on Warren upon the ground that it disclosed "mineral ingredients, varied as to size from a powder to pieces larger than one quarter of an inch in diameter." Thereafter, however, the Patent Office allowed the claims in the patent now sued on. Therefore, the patent in suit having been applied for before the first patent issued, the first patent will not be regarded as prior art as against the second, unless it is clear that the two patents cover the same invention. Thomson-Houston Elec. Co. v. Elmira Co., 71 F. 396, 18 C. C. A. 145.

[3] In patent 675,430 (1901), Warren describes certain grades and proportions of material which were to be mixed together and laid upon a specially prepared foundation of stone, varying in size from two inches to six inches in diameter. His mixture for a wearing surface is particularly described in his specification, and in his claims Warren describes a mixture of the sizes "in about the proportion named," the material to be rolled upon a prepared foundation to form a union therewith. He also claimed that the prepared foundation should be of "large stones," and that the "finer mixture would fill the voids and spaces whereby it is knitted thereto." It developed that there were many difficulties in the laying of pavement to comply with that patent, a particular objection being that in such a pavement the surface voids on the pavement would not close up. The proportion of course material was greater and that of fine material

was less than in patent 727,505. Construction was impracticable, whereas the patent in suit describes and claims an invention of highest practical merit. Inventions that stand in relation by way of species and genus do not prevent an inventor from obtaining patent for each, and when the inventions are different it is not material that the issuance of the one patent was prior to the issuance of the other. Dayton, etc., Co. v. Westinghouse Electric Co., 118 F. 562, 55 C. C. A. 390; Badische Fabrik v. Klipstein (C. C.) 125 F. 543.

We conclude that the patent in suit is valid, and that the claims sued on were infringed. Whether or not the claims should be restricted to the proportions which Warren disclosed, or their substantial equivalents, is not a question directly involved, for the proportions which he disclosed, or their substantial equivalents, have been used by Huber. In allowing damages, the District Court was correct.

The decree is affirmed.